UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANDER RAMAT,<br><br>                              Plaintiff,<br><br>v.<br><br>KIRSTJEN NIELSEN, Secretary of<br>Homeland Security, et al.,<br><br>                           Defendants. | Case No.:  3:17-cv-02474-BEN-JLB<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Pending before the Court are Defendants' motion to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction,[1] Plaintiff's motion for a preliminary injunction, Plaintiff's ex parte motion for a temporary restraining order, and Plaintiff's motion for leave to file a supplemental memorandum in support of his opposition to Defendant's motion to dismiss.  (Docket Nos. 6, 8, 13, 15.)  Because the Court finds it lacks subject matter jurisdiction over the action, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's motions are **DENIED as moot**.

---

[1] Also pending is Defendants' motion to dismiss Plaintiff's initial complaint, which was filed on February 12, 2018.  (Docket No. 4.)  However, on March 5, 2018, Plaintiff timely filed his First Amended Complaint ("FAC"), which rendered this motion moot. *See* Fed. R. Civ. P. 15(a)(1).  Therefore, the motion to dismiss the initial complaint is denied as moot.

1

## BACKGROUND & PROCEDURAL HISTORY[2]

Plaintiff Zander Ramat is a native and citizen of the Philippines. On December 25, 1996, at the age of thirteen, Plaintiff's grandmother brought him to the United States. He entered the United States at the Los Angeles International Airport with a false Philippines passport and a fraudulent United States visa. Plaintiff has never left the United States since his initial entry, and in October 2014, he married Cindy Ramat, a U.S. citizen. On October 26, 2015, Cindy Ramat filed a Form I-130 visa petition, which was approved on April 28, 2017.

Also on October 26, 2015, Plaintiff filed a Form I-485 application for adjustment of status with the United States Citizenship and Immigration Service ("USCIS") under 8 U.S.C. § 1255(a). On September 19, 2016, Plaintiff appeared for an interview with USCIS where he testified about his entrance to the United States. Regarding the passport and visa he presented, Plaintiff testified that his family had told him they had been lost.

On January 11, 2017, the USCIS asked Plaintiff for evidence regarding his entry into the United States. Plaintiff alleges he then contacted the grandmother who brought him to the United States, who told him the Philippines passport and United States visa Plaintiff entered with were "false" and provided by a "rogue Consulate/employee in the Philippines." (FAC ¶ 8.) His grandmother provided a declaration attesting to these facts, which Plaintiff submitted to the USCIS along with his own declaration asserting his lack of knowledge of the falsity of his entry documents.

On May 9, 2017, the USCIS denied Plaintiff's application for adjustment of status on the grounds that Plaintiff lacked sufficient evidence to establish that he had been inspected and admitted into the United States. Plaintiff filed a motion to reconsider the denial of his application, which was denied on November 1, 2017. Subsequently, on December 8, 2017, Plaintiff filed his initial complaint seeking judicial review of the

---

[2] The following overview of the facts is drawn from the allegations of Plaintiff's FAC. The Court is not making findings of fact.

3:17-cv-02474-BEN-JLB

USCIS's denial of his application for adjustment of status under the Administrative Procedures Act.  (Docket No. 1.)

On February 12, 2018, Defendants moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction on the grounds that the USCIS has initiated removal proceedings against Plaintiff on February 8, 2018.  (Docket No. 4.)  In lieu of filing an opposition to Defendants' motion, Plaintiff exercised his right to amend his pleading and filed the operative FAC.  (Docket No. 5.)  Defendants responded by moving again to dismiss for lack of subject matter jurisdiction on the same grounds.  (Docket No. 8.)

## LEGAL STANDARD

"It is a fundamental principle that federal courts are courts of limited jurisdiction." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, (1978)).  Under Rule 12(b)(1), a party can move a court to dismiss an action for lack of subject matter jurisdiction.  Fed. R. Civ. Proc. 12(b)(1).  In such a motion, the party asserting jurisdiction bears the burden to establish jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994) ("It is to be presumed that a cause lies outside [federal court] jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

A Rule 12(b)(1) jurisdictional attack may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial attack asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  *See Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  A Rule 12(b)(1) motion will be granted if, on the face of the complaint, and when considered in its entirety, the complaint fails to allege facts sufficient to establish subject matter jurisdiction.  *Id.*

In contrast, a factual attack is one that "relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings."  *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond

the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Additionally, the court need not assume the truth of the plaintiff's allegations, and "once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage,* 343 F.3d at 1039 n.2.).

## DISCUSSION

### A.      The Immigration & Nationality Act

Plaintiff's action seeks judicial review of the USCIS's denial of his application for adjustment of status under 8 U.S.C. § 1255(a). In 1952, Congress enacted the Immigration and Nationality Act ("INA") § 245, 8 U.S.C. § 1255, which authorized what is presently known as the "adjustment of status" process,[3] "whereby certain aliens physically present in the United States could seek lawful permanent resident status[.]" *Landin-Molina v. Holder*, 580 F.3d 913, 916 (9th Cir. 2009) (citing Immigration and Nationality Act, Pub. L. No. 82-414, tit. II, ch. 5, § 245, 66 Stat. 163, 217 (1952)). Adjustment of status under 8 U.S.C. § 1255(a), "is available only to aliens who were inspected and admitted or paroled into the United States, and to certain aliens with approved classification petitions brought under the Violence Against Women Act ("VAWA")." *Id.* (citing 8 U.S.C. § 1255(a)).

Importantly, "judicial review of the denial of an adjustment of status application" such as Plaintiff's "is expressly precluded by 8 U.S.C. § 1252(a)(2)(B)(i)." *Hassan v. Chertoff*, 593 F.3d 785, 788-89 (9th Cir. 2010) (per curiam). Additionally, where, as here, Plaintiff seeks judicial review for the USCIS's "abuse of discretion" in denying his

---

[3] INA § 245 and 8 U.S.C. § 1255 are used interchangeably to refer to the statutory adjustment of status process.

application for adjustment of status,[4] "judicial review of a discretionary determination is also expressly precluded by 8 U.S.C. § 1252(a)(2)(B)(ii)." *Id.*; *see also Mamigonian v. Biggs*, 710 F.3d 936, 945 (9th Cir. 2013) (same)). As a result, the Court lacks subject matter jurisdiction over Plaintiff's action.[5]

## B.     The Administrative Procedures Act

Plaintiff's reliance on the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA"), as the basis of his action does not require a different result for two reasons.

First, the APA does not apply "to the extent that statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Thus, as discussed above, because 8 U.S.C. § 1252, subds. (a)(2)(B)(i) & (a)(2)(B)(ii) expressly precludes judicial review of Plaintiff's denial of his application for adjustment of status, such review is also precluded under the ADA. *Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007, 1014-15 (S.D. Cal. 2017).

Second, even if 5 U.S.C. § 701(a)(1) did not apply, subject matter jurisdiction is lacking because Plaintiff's claim is not ripe. The APA "permits a citizen suit against an agency when an individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Rattlesnake Coal. v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting 5 U.S.C. § 702). However, the APA does not authorize review of *all* agency actions. Rather, only "final agency action for which there is no other adequate remedy in court" are actionable. *Id.* (quoting 5 U.S.C. § 704). "An agency action is 'final' when (1) the agency reaches the 'consummation' of its decisionmaking process

---

[4] *See* FAC ¶¶ 32, 33, 37, 39, 40.

[5] Although Defendants' motion does not argue for dismissal on this ground, the Court has a *sua sponte* obligation to confirm that it has subject matter jurisdiction. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) ("[I]t is well established that 'a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action[.]'" (quoting *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002))).

and (2) the action determines the 'rights and obligations' of the parties or is one from which 'legal consequences will flow.'" *Id.* (quoting *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)).

Defendants, relying on *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313 (9th Cir. 2010), argue that this Court lacks subject matter jurisdiction because removal proceedings against Plaintiff commenced on February 8, 2018 and, therefore, the USCIS's decision to deny his application for adjustment of status is not a "final agency action" as defined by the APA. To support their argument, Defendants submitted the 8 U.S.C. § 1229a Notice to Appear ("NTA") that was filed with the Immigration Court on February 8, 2018. (*See* Docket No. 4-2.) In opposition, Plaintiff argues this Court retains subject matter jurisdiction because: (1) Defendants failed to properly place him in removal proceedings when they failed to properly serve him with the February 8, 2018 NTA; (2) even if Defendants cured this deficiency with the filing of the superseding March 7, 2018 NTA, the "spirit of *Cabaccang*" requires the Court retain jurisdiction over his claim. (Docket No. 9, Pl.'s Opp'n at p. 3.)

While Defendants' motion to dismiss was pending, the Supreme Court decided *Pereira v. Sessions*, No. 17-459, 2018 WL 3058276 (U.S. June 21, 2018). In *Pereira*, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule."[6] *Id.*, 2018 WL 3058276, at \*7. Relying on *Pereira*, Plaintiff filed the pending motions for temporary restraining order and for leave to file a supplemental memorandum to, *inter alia*, advise the Court that Defendants' NTAs were additionally defective for failing to specify the time and

_____

[6] The "stop-time rule" refers to the provision in 8 U.S.C. § 1229b(d)(1), which discusses special rules relating to the determination of a noncitizen's period of "continuous residence" or "physical presence" for purposes of evaluating the noncitizen's eligibility for cancellation of removal. *See Pereira*, 2018 WL 3058276, at \*3 (citing 8 U.S.C. § 1229b, subds. (b)(1) & (d)(1)).

3:17-cv-02474-BEN-JLB

place of the removal proceedings, and therefore "the Immigration Court does not have jurisdiction over [him]." (Docket No. 13-2 at p. 15.) As a result, Plaintiff concludes, removal proceedings have not been initiated, and the USCIS's denial of his application for adjustment of status is a final agency action. The Court disagrees.

In *Cabaccang*, the Ninth Circuit held that "district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending." *Id.*, 627 F.3d at 1317. Pursuant to 8 C.F.R. § 1239.1, a removal proceeding conducted under 8 U.S.C. § 1229a "is commenced by the filing of a notice to appear with the immigration court." 8 C.F.R. § 1239.1. Defendants submitted evidence that the USCIS filed a NTA and a superseding NTA with the Immigration Court on February 8, 2018 and March 7, 2018, respectively, for Plaintiff's removal proceedings. Thus, notwithstanding the USCIS's failure to specify a date and time in the NTA and superseding NTA, by operation of law Plaintiff's removal proceedings "commenced" on February 8, 2018, or March 7, 2018 at the latest.[7] 8 C.F.R. § 1239.1.

*Pereira* does not aid Plaintiff. Contrary to his assertion that "*Pereira* has a far-reaching impact on the agency's jurisdiction to hold removal proceedings,"[8] the Supreme Court stated "the dispositive question in this case is much narrower . . . : Does a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?" *Id.* 2018 WL 3058276, at *7. Nothing in *Pereira* suggests that the failure to specify the date and time of removal proceedings in 8 U.S.C. § 1229(a) voids the commencement of removal proceedings. Plaintiff's argument that the Immigration Court lacks jurisdiction over him is not persuasive because the Court's primary concern is the existence of its *own* subject

---

[7] Defendants admit Plaintiff was not served with the February 8, 2018 NTA due to its delivery at an incorrect address. However, before *Pereira* was decided, the USCIS filed and served a superseding NTA on March 7, 2017. (Docket 8-2 at p. 1.) Plaintiff does not dispute that he was properly served with the March 7, 2017 NTA.

[8] Docket No. 13-2 at p. 14.

matter jurisdiction (or lack thereof). *Pereira* teaches simply that the service of a notice to appear that fails to specify the time or place of the removal proceedings does not trigger the "stop-time rule" for determining the end of a noncitizen's period of "continuous residence" or "physical presence." *Id.*, 2018 WL 3058276, at *7 n.5 ("The Court leaves for another day whether a putative notice to appear that omits any of the other categories of information enumerated in § 1229(a)(1) triggers the stop-time rule.").

Invoking "the spirit of *Cabaccang*" is equally unhelpful to Plaintiff. Plaintiff argues that "[j]ust as the *Cabaccang* court reasoned [the plaintiffs] should not able to circumvent removal by running to federal court and filing APA claims, Plaintiff argues Defendants should not be able to circumvent a valid question of law by running to place Plaintiff in removal proceedings." (Opp'n at pp. 3-4.) But the *Cabaccang* court addressed this exact scenario, holding that "[r]egardless of whether the [plaintiffs'] removal proceedings began before this action, the pendency of removal proceedings now means their claims are not ripe for judicial review." *Id.*, 627 F.3d at 1317 (citation omitted). The *Cabaccang* court further explained that "although jurisdiction is usually determined from the filing of the relevant complaint, after-arising events can defeat jurisdiction by negating the ripeness of a claim." *Id.* (citing *Hose v. INS,* 180 F.3d 992, 996 (9th Cir. 1999)).

According to the Immigration Court's automated case status information system using Plaintiff's alien registration number (A 204 306 749),[9],[10] Plaintiff's next hearing is scheduled for October 24, 2018 at 8:00 a.m. at 401 West A Street, Suite 800, San Diego,

---

[9] *See* Docket No. 4-2, "Notice to Appear" filed on February 8, 2018.

[10] *See* "Executive Office for Immigration Review: Customer Service Initiatives," https://www.justice.gov/eoir/customer-service-initiatives ("The Executive Office for Immigration Review (EOIR) established an electronic phone system to provide EOIR's customers with ready access to immigration court information in English and Spanish. Users can dial 1-800-898-7180 (toll-free) to obtain case status information 24 hours a day, 7 days a week.") (last visited July 2, 2018).

California 92101.[11]  Thus, as a result of the Immigration Court's pending removal proceedings against Plaintiff, his APA claim is not ripe for adjudication, and this Court lacks subject matter jurisdiction to hear his APA claim.  *See Mamigonian*, 710 F.3d at 944 (district court lacks jurisdiction where removal proceedings are pending since there is no "final agency action" sufficient to confer jurisdiction under the APA because the Immigration Judge presiding over the removal proceedings could revisit the status adjustment) (citing *Cabaccang*, 627 F.3d at 1315-16).

### CONCLUSION

For all of the foregoing reasons, the Court finds Plaintiff has not met his burden to establish the existence of subject matter jurisdiction.  Therefore, Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**, and Plaintiff's First Amended Complaint is **DISMISSED**.


Dated:  July 6, 2018

_____
Hon. Roger T. Benitez
United States District Judge

---

[11] "Under Federal Rule of Evidence 201, [the Court] may take judicial notice of the records of state agencies and other undisputed matters of public record.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004) (citations omitted).

3:17-cv-02474-BEN-JLB